### Julius Asmossen, Appellee, v. Swift & Company, Appellant.

### Gen. No. 14,449.

1. CONTRIBUTORY NEGLIGENCE—*when person scalded while at work in vat not guilty of.* Held, that the plaintiff who was injured while at work about a vat by falling therein and being scalded, was not, under the evidence, guilty of contributory negligence.

2. MASTER AND SERVANT—*when doctrine of assumed risk does not apply.* Held, under the evidence that the plaintiff who was injured while at work about a vat by falling therein and being scalded, did not assume the risk which resulted in his injury.

3. VERDICTS—*when not excessive.* Held, in an action on the case for personal injuries, that a verdict for $2,000 was not excessive where it appeared that the plaintiff was severely burned about his legs and sustained injuries permanent in character.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. GEORGE A. DUPUY, Judge, presiding. Heard in this court at the March term, 1908. Affirmed. Opinion filed May 3, 1909. Rehearing denied May 17, 1909.

WINSTON, PAYNE, STRAWN & SHAW, for appellant; JOHN BARTON PAYNE and JOHN D. BLACK, of counsel.

WEST, ECKHART & TAYLOR, for appellee.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

This is an appeal from a judgment for $2,000 recovered by appellee against appellant in a suit to recover damages for injuries claimed to have been caused by appellant's negligence. The declaration is in case and contains only one count, and defendant,

appellant here, pleaded the general issue. The sufficiency of the declaration is not questioned, nor is it claimed that there is any variance between it and the evidence. The jury found the issues for the plaintiff and assessed his damages at $2,000, and the court, after overruling defendant's motions for a new trial and in arrest of judgment, rendered judgment on the verdict.

The plaintiff is, by birth, a German. He is a tinsmith and learned his trade in Germany. He has been in this country thirty-four years, the last twenty years of that time in the city of Chicago. He had worked as tinsmith for the defendant two years continuously next before August 29, 1905, the date of the accident, and was sixty years of age at that date. About nine or ten o'clock in the forenoon of August 29, 1905, the foreman of the tinshop ordered the plaintiff to go to the fifth floor of the lard refinery and repair a spot in the room, and referred him to the assistant foreman of the refinery, and it appears from the testimony of Sullivan, the assistant foreman of the lard refinery, that he showed plaintiff the job, which was to repair a pipe. It also appears that plaintiff knew where the pipe was. Plaintiff went up to the fifth floor, taking with him his helper, John Bock. The room in which the pipe was is thirty feet in length from east to west, and twenty feet wide from south to north. There is a vat in the southwest corner of the room, situated about five feet from the west wall and four feet from the south wall. It is about ten feet in length, from east to west, about three and a half feet wide and three and a half feet deep. It is constructed of two inch planks, and there is an iron rod across it from side to side, about the middle of its length, to hold the sides together. The pipe to be repaired was of galvanized iron and was six inches in diameter. It came from the roof through the ceiling of the room and turned with an elbow near the east end of the vat, and then ran west, horizontally, over the centre of the

vat to and through the west wall. It was five or six feet above the top of the vat. Two pipes run into the vat from the roof, one a water pipe, one inch in diameter, through which cold water was introduced into the vat, and which ran down eighteen inches into the vat; the other is a steam pipe an inch and a half in diameter, which runs nearly to the bottom of the vat. It branches out into two pipes at the bottom, which are situated about nine inches from the sides of the vat, one on each side. These pipes are about two and a half or three inches above the bottom of the vat, and are perforated with holes a few inches apart to permit steam to escape. Each of the water and steam pipes is operated by a valve, by means of which the water or steam is let into or excluded from the vat. The vat was used for washing greasy rags, the rags being in constant demand in the refinery.

Plaintiff and his helper, Bock, were the only witnesses who observed and knew of their own knowledge whether there was any water in the vat when they first saw it, on the day of the accident, and both of them testified that the vat was empty, that there was no water in it, and plaintiff testified that while he was taking the old pipe down there was no water in the vat. Some of defendant's witnesses testified to the custom of letting in the cold water and steam, from which it is sought to be inferred that there must have been water in the vat when plaintiff and his helper went to it to do the work ordered. When plaintiff arrived at the vat he directed Bock, his helper, to go for a heavy plank. In about twenty minutes Bock returned with a plank about six feet long, ten or twelve inches wide and an inch and a half thick. During Bock's absence, plaintiff made straps of galvanized iron to hang the pipe. The plank was placed, resting on the east end of the vat, which it extended over eight or more inches, and on the iron bar which ran from side to side of the vat. Plaintiff then got on the plank and he and his helper took down a piece of the old pipe about ten or

twelve feet in length, and a part of the elbow. Plaintiff and Bock both testified that there was no water in the vat at that time. When the old pipe was taken down, plaintiff removed the plank from the vat and placed it against the north wall of the room, and he and his helper then went to the tinshop with the old pipe, made a new piece of pipe and an elbow and returned to the vat, and found that there were four, five or six inches of water in it, and plaintiff told the vatman not to put any more water or any steam in the vat till he should have finished his work, and after he had replaced the plank on the vat and was trying to place the new pipe in position, the vatman commenced to turn on the steam, and plaintiff told him to shut it off, that the job would be finished in twenty minutes; but the vatman said, "I can't wait for you fellows; I have to get my day's work done", and continued to turn on the steam. This occurred very shortly before the accident. The plaintiff, at the time of the accident, was standing on the plank near the east end of the vat, trying to slip the elbow over the collar. The new piece of pipe weighed between fifty and sixty pounds, and while he was thus engaged, he says the steam came up so that he could not see, and he slipped and jumped down into the hot water. He says he guesses that the plank slipped. Bock's testimony is corroborative of the plaintiff. He testified, in substance, that the vatman turned the steam on while plaintiff was on the plank, and it was a couple of minutes before it came up through the water, and then it came up pretty fast; that plaintiff was standing about two feet from the east end of the vat, working on the elbow, and was shoving the pipe to the south when he slipped.

Appellant's contentions are, that plaintiff assumed the risk of the work which he was doing at the time of the accident; that he was guilty of contributory negligence; that the court erred in refusing to direct a verdict on defendant's motion and tendered instruction to that effect; and in admitting improper evidence

for plaintiff, and in refusing instructions requested by defendant, and that the damages are excessive.

It is the duty of the master to exercise reasonable care to furnish the servant with a reasonably safe place in which to work, and to so maintain it. Whether the defendant in the case at bar, acting by its servant, the vatman, was guilty of negligence which caused the injury to the plaintiff, in turning steam into the vat while plaintiff was at work over it, in pursuance of a proper order given to him by his foreman, was a question for the jury. The jury found for the plaintiff on that question, the evidence supports the finding, and it is not contended by defendant's counsel that the defendant was not negligent.

The defendant's negligence is sought to be avoided by the contentions that plaintiff assumed the risk, and was also guilty of contributory negligence. What risk did he assume and in what was he negligent? When he went to the vat it was empty. It was only three and a half feet in width and the same distance above the floor. There certainly was no obvious or extraordinary risk in placing a plank of the dimensions shown by the evidence, as the plank in question was placed, and commencing the work which plaintiff had been directed to do, and plaintiff took down the old pipe without difficulty or accident. The vatman, William Seaman, also referred to as Zener in the evidence, who died before the trial, must have known, when he saw the plaintiff take the old pipe down, that it had to be replaced, and, after plaintiff returned from the tinshop with the new pipe, he was requested by plaintiff not to turn either water or steam into the vat before plaintiff should complete the job. When plaintiff got on the plank to hang the new pipe, there was in the vat four or five inches of water. He had to proceed with his work. What more could he have done for his safety than request defendant's servant, as he did, not to turn in any water or steam? Can it be reasonably said that after making such request, he assumed the

risk of the steam being turned on? We think not. Subsequently, while plaintiff was at work, trying to hang the piece of pipe ten or twelve feet long, six inches in diameter and fifty to sixty pounds in weight, Seaman commenced turning steam into the vat, notwithstanding plaintiff's direction to the contrary, and continued so to do until the steam became so thick and hot as to obscure plaintiff's vision, with the unfortunate consequence that he slipped into the hot water in the vat and was injured.

Of the witnesses who testified, the plaintiff and Bock are the only ones who saw the accident and who knew, of their personal knowledge, of the conditions before and at the time of the accident.

In Illinois Steel Co. v. Bauman, 178 Ill. 351, the plaintiff was injured by the intentional act of a coservant in pouring an excessive quantity of slag into a mold, which caused an explosion, by which plaintiff was injured. The court say: "It cannot be said that an explosion occasioned by the intentional act of a pourer, in purposely permitting slag to pass into the molds, in a quantity known to be dangerous, is, as a matter of law, one of the ordinary, usual and known risks of his employment. Whether it is so is a question of fact—not of law". *Ib.* 355.

The question whether the plaintiff assumed the risk, in the present case, was submitted to the jury by an instruction given at defendant's request, and we do not disagree with the finding that he did not.

Defendant's counsel contend that the plaintiff, knowing the danger of remaining on the plank when the steam was being turned on, was guilty of contributory negligence, and cite the following testimony of plaintiff in support of the contention:

"Q. And you knew that you could not work up there safely with the steam coming from there; is not that so?

A. That is the reason I told him. That is the reason I said for him to shut off the steam."

But, certainly, the plaintiff could not reasonably anticipate that Seaman, the man in charge of the vat, would turn on the steam at all, or would continue to turn it on after plaintiff had directed him to shut it off.

It is further contended that plaintiff, in remaining on the plank after he knew that the steam was being turned on, was guilty of contributory negligence. The plaintiff, while the steam was being turned on, was holding up the east end of a 50 or 60 pound piece of pipe, at the elbow near the east end of the vat. Had he jumped to the floor, as it is said by defendant's counsel he might have done, the pipe, the west end of which was hanging loosely on a hanger, would necessarily have fallen and perhaps have broken, and, in falling, might have injured the plaintiff. He was in a dangerous position, standing on the plank and holding up that weight, and had little time to think. Under these circumstances, it cannot be said, as matter of law, that he was negligent in not dropping the pipe and leaping to the floor. This was a question for the jury (Ill. C. R. Co. v. Anderson, 184 Ill. 294, pp. 303-304), and we do not dissent from the finding as to contributory negligence.

The objections that the court erred in refusing to direct a verdict for defendant, and in admitting and refusing to strike out certain evidence for appellee, are without merit.

Counsel for defendant quote at length, in their argument, certain instructions offered for defendant, which they say the court erred in refusing. All they say in reference to these instructions is this: "A reading of these instructions makes clear the view of the trial court, in refusing to grant the peremptory instructions." We think it very clear that the court properly refused to take the case from the jury.

Plaintiff testified that his helper took him out of the vat; that there was no skin on his legs from his knees to his ankles, and one leg was burned over the knee. He was taken to the County Hospital in an ambulance,

Asmossen v. Swift & Co., 148 App. 248.

where he was put to bed and his legs bandaged. Every day for a week, sometimes twice, he was taken to the operating room and diseased flesh removed from his legs. He remained in the hospital for six weeks, unable to walk. He left it on crutches and went, with the aid of another person, to the room which he had occupied prior to the accident, where he remained a week. He then became worse, and was treated by two physicians for a short time, when he went to the Alexian Brothers Hospital, where he remained under treatment for three weeks, when he again returned to his room. His wages were $10 per week, and he could not go to work until February, 1906, about six months after the accident. Doctor Hall examined the plaintiff the day before the doctor testified. He testified that he found scar tissue practically all over his right leg from two inches above the knee to the base of the toes, and that the left leg was in the same condition except the scar tissue did not extend above the knee, and that there was a general varicose condition of the veins of the legs; that the legs above the knees were in a normal condition and without varicose veins. He further testified that if the plaintiff was, before the accident, in good health, the accident would be a sufficient cause for the conditions which he found. Also, that it would be necessary for plaintiff to keep his legs bandaged to prevent the varicose veins from breaking. The plaintiff was in good health before the accident. We cannot sustain the objection that the damages are excessive.

We find no reversible error in the record. Therefore, the judgment will be affirmed.

*Affirmed.*